IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

FILED
U.S. DISTRICT COURT

NORTHERN DIVISION

2005 JUN 17 P 2: 10

DISTRICT OF UTAH

BY:_____
        DEPUTY CLERK

|  |  |
|---|---|
| TONYA L. ROBISON,<br><br>        Plaintiff,<br><br><br>   v.<br><br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security Administration,<br><br>        Defendant. | Case No. 1:04-CV-96 SA<br><br><br><br>**MEMORANDUM DECISION AND<br>ORDER** |

Before the court is an action filed by Plaintiff, Tonya L. Robison, asking the court to reverse the final agency decision denying her application for Supplemental Security Income (hereafter referred to as "SSI") under Title XVI of the Social Security Act.  *See* 42 U.S.C. §§ 1381-1383f (2005).  Plaintiff's application was denied because the Administrative Law Judge (hereafter referred to as "ALJ") found that although Plaintiff is unable to return to her past relevant work, she is capable of making an adjustment to work that exists in significant numbers in the national economy, and therefore is not disabled. Plaintiff now challenges the ALJ's decision by arguing that it is not supported by substantial evidence and is legally erroneous.

After examining the parties' memoranda and the record, the
court has determined that oral argument would not materially
assist the determination of this case and has elected to
determine Plaintiff's case on the basis of the written materials
submitted to the court.  *See* DUCivR 7-1(f).  The court has
carefully considered the memoranda and the complete record in
this matter, and concludes that the ALJ's decision is supported
by substantial evidence and is not legally erroneous.  As a
result, the ALJ's decision is affirmed.

**BACKGROUND**

Plaintiff applied for SSI in October 2001.  (File Entry #6,
The Certified Copy of the Transcript of the Entire Record of the
Administrative Proceedings Relating to Tonya L. Robison
(hereafter referred to as "Tr. __"), 59-62, 64, 80.)  Plaintiff's
alleged onset date of disability is October 3, 2001.  (Tr. 13,
252.)  Plaintiff's claim was denied at the initial and
reconsideration levels of administrative review.  (Tr. 26, 30-32,
34-37.)  Plaintiff then requested a hearing before an ALJ, which
was held on October 21, 2003.  (Tr. 29, 247-309.)

In his February 24, 2004 decision, the ALJ denied
Plaintiff's claim, finding that although Plaintiff could not
return to her past relevant work, Plaintiff was able to perform a
significant number of jobs that exist in the national economy.
(Tr. 11-23.)  The Appeals Council denied Plaintiff's subsequent

2

request for review (Tr. 5-7, 9), making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 416.1481.

On July 14, 2004, after receiving the Appeals Council's denial of her request for review, Plaintiff filed a motion to proceed *in forma pauperis*. (File Entry #1.) That same day, the court granted Plaintiff's motion and Plaintiff filed the instant action. (File Entries #2, 3.) The case was assigned to United States District Judge Paul G. Cassell. (File Entry #3.) On July 19, 2004, Judge Cassell referred the case to United States Magistrate Judge Samuel Alba pursuant to 28 U.S.C. § 636(b)(1)(B). (File Entry #4.) Defendant then filed her answer, along with the administrative record, on September 1 and 3, 2004. (File Entries #5, 6.)

On September 17, 2004, the parties filed a joint statement consenting to have the magistrate judge conduct all proceedings and enter the final judgment in this case pursuant to 28 U.S.C. § 636(c). (File Entry #8.) Accordingly, on October 12, 2004, Judge Cassell referred the case to Magistrate Judge Alba pursuant to 28 U.S.C. § 636(c). (File Entry #9.)

On October 12, 2004, Plaintiff filed her motion to vacate or reverse the Commissioner's decision, along with her supporting memorandum. (File Entries #10, 11.) On December 15, 2004, Defendant filed her memorandum. (File Entry #14.) On December 29, 2004, Plaintiff filed her reply memorandum. (File Entry #15.)

3

**STANDARD OF REVIEW**

The court reviews the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  The findings of the Commissioner, "if supported by substantial evidence, shall be conclusive."  42 U.S.C. 405(g) (2005).

"Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *see also Doyal v.* Barnhart, 331 F.3d 758, 760 (10th Cir. 2003); *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).  "'Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.'"  *Grogan*, 399 F.3d at 1261-1262 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)); *see also O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) ("Evidence is insubstantial if it is overwhelmingly contradicted by other evidence."); *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) ("A finding of '"no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."'" (Citations omitted.)).

In conducting its review, the court must "examine the record closely to determine whether substantial evidence supports" the

Commissioner's decision.  *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).  However, the court may "'neither reweigh the evidence nor substitute [its] judgment for that of the agency.'" *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001) (citation omitted); *see also Grogan* 399 F.3d at 1262 (noting that although the court does not reweigh the evidence, it must meticulously examine the record as a whole to determine if the substantiality test has been met).

The court's review also extends to determining whether the Commissioner applied the correct legal standards.  *See Qualls,* 206 F.3d at 1371.  Reversal may be appropriate where the Commissioner uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Secretary of Health and Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## ANALYSIS

Plaintiff makes the following four arguments to the court: (1) the ALJ erred in evaluating whether Plaintiff's impairments met or equaled a listed impairment; (2) the ALJ erred in evaluating Plaintiff's complaints of pain; (3) the ALJ erred by failing to give sufficient weight to Plaintiff's treating physician's opinion; and (4) the ALJ erred by failing to include certain limitations in his residual functional capacity

(hereafter referred to as "RFC") determination, which in turn resulted in an improper hypothetical question being presented to the vocational expert (hereafter referred to as "VE").  The court examines each of these arguments in turn.

### A.  Whether Plaintiff's Impairments Met or Equaled a Listed Impairment

The court first turns to Plaintiff's argument challenging the ALJ's determination at step three of the five-step disability analysis that Plaintiff's impairments did not meet or equal a listed impairment.  Plaintiff challenges the ALJ's finding by arguing (1) the ALJ failed to properly examine whether Plaintiff's impairments satisfy the requirements of Listing 1.02(A); (2) the ALJ failed to properly examine whether Plaintiff's impairments satisfy the requirements of Listings 12.04 and 12.06; and (3) the ALJ failed to properly examine whether the combined effect of Plaintiff's impairments is sufficiently severe to equal a listed impairment.

At step three, the claimant has the burden of demonstrating, through medical evidence, that her impairments "meet *all* of the specified medical criteria" contained in a particular listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  In rejecting the claimant's argument, the ALJ is required to discuss the evidence and explain why he has found that the claimant is not disabled at step three.  *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  "The record must demonstrate that the ALJ considered all

of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1009-10 (citation omitted); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) ("The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence.")  Because of the standard of review employed by the court in evaluating the ALJ's decision, the court cannot adequately review the ALJ's step three finding unless that finding is supported by specific weighing of the evidence.  *See Clifton*, 79 F.3d at 1009.

First, Plaintiff argues that the ALJ failed to properly evaluate whether Plaintiff's impairments satisfy the requirements of Listing 1.02(A).  The ALJ explained that the reasons he found that Plaintiff did not meet the requirements of Listing 1.02(A) were because Plaintiff's testimony did not support that her ankle caused her problems expected of a listing level case, and because the objective medical evidence did not support such a finding. (Tr. 15.)  The ALJ's discussion of the evidence provides support for this explanation.  Although the court is unable to find specific objective medical evidence discussed by the ALJ that contradicts Plaintiff's claim, the ALJ supported his finding with many specific examples of Plaintiff's testimony and behavior that

7

contradict Plaintiff's claim.  For example, in apparently

focusing on the requirements of Section 1.00B2b, contained within

Listing 1.02(A)[1] regarding whether Plaintiff has the inability to

---

[1]     Listing 1.02(A) contains the following criteria:
*Major dysfunction of a joint(s) (due to any cause)*:  Characterized by gross anatomical deformity (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:
A.   Involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; . . . .
20 C.F.R. Pt. 404, Subpt. P., App. 1.  Section 1.00B2b of the regulations provides:
b.   What We Mean by Inability to Ambulate Effectively
(1)   Definition.  Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e. an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.  (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
(2)   To ambulate effectively,

ambulate effectively, the ALJ discussed that Plaintiff had not fallen down for a month, and that the last time she fell, she fell on a step in the dark, an occurrence that could happen to many people.  (Tr. 17, 18.)  The ALJ noted that Plaintiff does not use a motorized cart at the grocery store on a regular basis, preferring instead to walk while leaning on a grocery cart.  (Tr. 18.)  The ALJ noted that Plaintiff could ride her bike the three to four blocks to the grocery store and back.  (Tr. 18.)

The ALJ referred to his attempts to determine if Plaintiff could drive had her license not been revoked due to her DUI and

--------

individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school.  Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

9

driving without proof of insurance convictions.  (Tr. 17, 18,
253.)  The ALJ's attempt to determine Plaintiff's ability to
drive without her criminal convictions again goes to her alleged
inability to ambulate effectively, a necessary requirement of
Listing 1.02(A).  *See* Listing 1.02(A); *see also* 20 C.F.R. §
416.966(c) (explaining that Social Security Administration will
not consider non-medical factors that disallow a claimant from
finding work).  However, as the ALJ noted in his decision,
Plaintiff was unable to give him helpful responses when he asked
her whether she could at least ride in a car.  (Tr. 17.)
Plaintiff's responses to the ALJ regarding her ability to push
down on a gas pedal were also somewhat nonspecific and vague.
(Tr. 18, 255.)  The ALJ was able to discern that Plaintiff was
able to ride in a car forty-five to fifty minutes to the hearing
that day, and that Plaintiff did not have any physical complaints
regarding that experience.  (Tr. 18, 253.)

The ALJ also noted that Plaintiff did not use an assistive
device the day before the hearing nor at the hearing (Tr. 18),
and that Plaintiff had not followed prescribed treatment (Tr.
16).  *See* 20 C.F.R. § 416.930(b) (allowing agency to deny
benefits to claimant who fails to follow or pursue treatment).

Plaintiff has argued that other evidence, both testimonial
and objective medical evidence, contradict the ALJ's
determination.  The court has carefully considered the evidence
set forth by Plaintiff, as well as reviewing the record on its

own, and concludes that although evidence exists that Plaintiff
meets some of the requirements of Listing 1.02(A), evidence
supporting Plaintiff's inability to ambulate effectively does not
overwhelm the evidence set forth by the ALJ.  *See Grogan v.
Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  Instead,
having reviewed Plaintiff's argument, the record, and the ALJ's
decision, the court concludes that the ALJ's finding that
Plaintiff does not meet the requirements of Listing 1.02(A) is
supported by substantial evidence and is not legally erroneous.

Second, Plaintiff argues the ALJ erred by completely failing
to evaluate whether Plaintiff met Listings 12.04 and 12.06.
However, Plaintiff fails to acknowledge that the ALJ stated that
he had considered all the listings, and these two listings would
be included in the evaluation.  (Tr. 15.)  Furthermore, the ALJ
carefully evaluated whether Plaintiff met Listing 12.08, a
separate mental impairment listing, revealing that the ALJ
considered whether Plaintiff met mental impairment listings.[2]
(Tr. 15.)  In addition, Plaintiff does not even specifically
argue that she meets Listing 12.04.  Instead, she simply argues
that the ALJ appears not to have properly considered that
listing.  (File Entry #11, at 11.)

Plaintiff does argue that she "appear[s] to meet" the C
criteria of Listing 12.04, which requires that she have "[a]

_____

[2]Plaintiff has not challenged the ALJ's finding regarding
Listing 12.08.

residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate." Plaintiff supports her argument that she meets this listing by pointing our specific notes from her psychological evaluation with Dr. Richard Grow, that she "broke into tears several times" (Tr. 232), that she was depressed and cried a lot (Tr. 287), and that she had concentration problems and did not have the ability to deal well with supervisors, coworkers, job stress, and job change (Tr. 236). Although these notes indicate that Plaintiff suffers from mental problems, they do not rise to the level of providing a medical opinion that Plaintiff had a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause [Plaintiff] to decompensate." Because Plaintiff has not adequately supported her argument, and because the ALJ indicated that he had considered all the listings in his analysis, the court rejects Plaintiff's argument.

Finally, Plaintiff also argues the ALJ erred by failing to adequately examine whether the combined effect of Plaintiff's impairments equaled a listed impairment. *See* 20 C.F.R. § 416.923. Plaintiff specifically argues that Plaintiff's combined impairments equal the severity of Listing 1.02(A). Plaintiff argues that the ALJ wholly failed to consider this possibility.

12

However, in his decision, the ALJ twice declared that he had found that Plaintiff's impairments did not equal, singly or in combination, the requirements of Listing 1.02.  (Tr. 15.)  The ALJ's decision adequately explains why this finding was reached, and the court concludes that it is supported by substantial evidence.

In summary, the court rejects all of Plaintiff's arguments challenging the ALJ's step three finding that Plaintiff did not meet or equal a listed impairment.  The court next examines whether the ALJ properly evaluated Plaintiff's complaints of pain.

### B.   Whether the ALJ Properly Evaluated Plaintiff's Complaints of Pain

Plaintiff argues that the ALJ ignored the required analysis of evaluating pain and instead resorted to an unacceptable "sit and squirm" approach.  (File Entry #11, at 15.)  Having carefully examined the ALJ's decision, the court rejects this argument.

As Plaintiff points out, the regulations direct the adjudicator to determine whether there is objective evidence upon which to base a determination that a claimant's impairment reasonably could be expected to produce pain.  *See* 20 C.F.R. §416.929(b).  Once an impairment is determined to exist which reasonably could cause pain, section 416.929(c) directs the decision maker to focus on whether the intensity and persistence of the pain limit the claimant's capacity for work.  Since

objective evidence alone does not always determine the functional limitation caused by pain, the regulations direct that other more subjective factors be considered, including:

|  |  |
|---|---|
| (i) | Your daily activities; |
| (ii) | The location, duration, frequency, and intensity of your pain or other symptoms; |
| (iii) | Precipitating and aggravating factors; |
| (iv) | The type, dosage, effectiveness, and side effects of any medications you take or have taken to alleviate your pain or other symptoms; |
| (v) | Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; |
| (vi) | Any measures you use or have used to relieve your pain or other symptoms (e.g. lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and |
| (vii) | Other factors concerning your functional limitations and restrictions due to pain or other symptoms. |

20 C.F.R. § 416.929(c)(3).

As Plaintiff also points out, in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), the Tenth Circuit approved a comparable approach for evaluating the severity of pain.  The court reviewed the section of the Social Security Act dealing with disability based on pain and concluded "the statute requires only a loose nexus between the proven impairment and the pain alleged." *Luna*, 834 F.2d at 164.  The court identified several factors in addition to

objective evidence which a decision maker should consider when
assessing the credibility of pain allegations.   These include:

> 1.   Persistent attempts to find relief for
>       pain;
> 2.   A willingness to try any treatment
>       prescribed;
> 3.   Regular use of crutches or a cane;
> 4.   Regular contact with a doctor;
> 5.   The possibility that psychological
>       disorders combine with physical
>       problems;
> 6.   The claimant's daily activities; and
> 7.   The dosage, effectiveness and side
>       effects of medication.

*Luna*, 834 F.2d at 166.

Contrary to what Plaintiff argues, the ALJ followed these
guidelines in evaluating Plaintiff's allegations of pain.   The
ALJ acknowledged that Plaintiff had been diagnosed with right
ankle degenerative disease, and that it was a severe impairment.
(Tr. 14.)   The ALJ concluded that Plaintiff's allegations of pain
were not entirely credible, however, because she did not give
persuasive specific responses regarding her pain, and the
specific responses she gave, as opposed to general complaints of
pain, did not support the severity of pain she indicated when she
just generally spoke of her pain.   (Tr. 17-18.)   For example,
Plaintiff testified that after grocery shopping, her greatest
pain was from her back, not her ankle, and that she usually would
lie down because of back rather than ankle pain.   (Tr. 18.)   When
asked specifically about how her ankle felt before and after
experiences, Plaintiff went blank or could not give what the ALJ

15

considered a persuasive specific answer.  As a result, the ALJ was not convinced that the ankle pain was as severe as Plaintiff generally alleged.  (Tr. 18.)

The ALJ noted that, in examining Plaintiff's ability to function in a day, Plaintiff again had a difficult time giving specific, rather than general, examples of how her ankle pain disabled her.

The ALJ noted that Plaintiff had not used an assistive walking device the day before the hearing or at the hearing. (Tr. 18.)  The ALJ also noted that Plaintiff never obtained the rocker bottom sole shoe prescribed for her, and she had not returned to the doctor regarding her ankle problems for a year after her first January 2001 examination.  (Tr. 16.)

The ALJ also noted, in discussing Plaintiff's credibility, Plaintiff's inconsistent statements regarding her continued methamphetamine use.  (Tr. 19.)

"'Credibility determinations are peculiarly the province of the finder of fact, and [this court] will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)).  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote

16

omitted)).   Nevertheless, "[c]redibility is the province of the

ALJ," *Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d

1495, 1499 (10ᵗʰ Cir. 1999), and a reviewing court should

"generally treat credibility determinations made by an ALJ as

binding upon review" where the ALJ has given specific, legitimate

reasons for disbelieving the claimant's testimony, *Gosset v.*

*Bowen*, 862 F.2d 802, 807 (10ᵗʰ Cir. 1988).

Keeping in mind this deferential standard of review, the

court concludes the ALJ followed the proper legal analysis in

evaluating Plaintiff's allegations of pain by giving specific,

legitimate reasons for reaching his finding, and that substantial

evidence supports the ALJ's finding that Plaintiff's allegations

of pain were not entirely credible.   As a result, the court

rejects Plaintiff's argument.

### C.   Whether the ALJ Properly Evaluated Plaintiff's Treating Physician's Opinion

The court next examines Plaintiff's challenge of the ALJ's

treatment of the opinion of Dr. Richard Gregoire, Plaintiff's

treating physician.   Plaintiff's argument focuses on Dr.

Gregoire's December 29, 2003 letter, in which Dr. Gregoire opined

that Plaintiff's medical conditions "have led to [her] inability

to function in gainful employment as an adult in an effective

way."   (Tr. 239.)

The ALJ did not accept Dr. Gregoire's opinion because it

"[was] not supported by the record nor the clinical notes."   (Tr.

20.)   The ALJ explained that Dr. Gregoire tried to connect
Plaintiff's ankle problems and post traumatic stress syndrome to
very remote incidences, which occurred in 1979 and 1981.
Further, no supporting objective evidence in the form of clinical
notes and/or findings had been presented by Dr. Gregoire to
support his opinion.   (Tr. 20.)

Plaintiff argues the ALJ legally erred in giving the reasons
he gave for not accepting Dr. Gregoire's opinion that Plaintiff
could not work.   However, the ALJ's analysis is consistent with
the law set forth by Plaintiff in his argument.   As Plaintiff set
forth in his argument, an ALJ must first consider whether a
treating physician's opinion is "well supported by medically
acceptable clinical and laboratory diagnostic techniques," SSR
96-2p, and if it is not, no further inquiry is required.   (File
Entry #11, at 16-17.)   This analysis is exactly what the ALJ
followed.   The ALJ explained that no objective medical evidence
had been presented to support Dr. Gregoire's opinion, and
Plaintiff has not pointed out any such evidence to this court.
Such a reason was a "good reason" that was "sufficiently specific
to make clear" on review why Dr. Gregoire's opinion had not been
accepted by the ALJ.   *See* SSR 96-2p; *Watkins v. Barnhart*, 350
F.3d 1297, 1300 (10th Cir. 2003).

The court also notes that Dr. Gregoire's opinion amounted to
an ultimate determination of disability, an issue reserved to the
Commissioner.   *See* 20 C.F.R. § 416.927(e) (stating that medical

18

source opinions on issues reserved to the Commissioner, such as whether a claimant is "disabled" or "unable to work" are not entitled to "any specific significance").

Therefore, the court concludes the ALJ properly did not accept Dr. Gregoire's opinion, and therefore rejects Plaintiff's argument.

**D.   Whether the ALJ Erred in Determining Plaintiff's RFC and in Presenting a Hypothetical Question to the VE**

Plaintiff's final argument challenging the ALJ's RFC determination and resultant hypothetical question presented to the VE rests entirely on Plaintiff's argument that the ALJ improperly found Plaintiff's allegations of pain were not entirely credible.  Because the court has rejected Plaintiff's argument challenging the ALJ's credibility assessment, the court also rejects Plaintiff's final argument challenging the ALJ's RFC assessment.

**CONCLUSION**

Based on the above analysis, the court concludes that the ALJ's decision that Plaintiff is not disabled is supported by

19

substantial evidence and is not legally erroneous.  As a result, **THE COURT HEREBY ORDERS** that Plaintiff's request for reversal or remand is **DENIED** and the Commissioner's decision is **AFFIRMED**.

DATED this _17th_ day of June, 2005.

BY THE COURT:


Samuel Alba
United States Chief Magistrate Judge